**Joseph DeWayne LaRUE, Plaintiff in Error,**

v.

**The STATE of Oklahoma, Defendant in Error.**

**No. A–13565.**

Court of Criminal Appeals of Oklahoma.

June 23, 1965.

Rehearing Denied Aug. 2, 1965

Miskovsky, Sullivan, Embry & Miskovsky, Oklahoma City, for plaintiff in error.

Joseph C. Muskrat, Asst. Atty. Gen., for defendant in error.

BUSSEY, Presiding Judge.

Joseph DeWayne LaRue, hereinafter referred to as defendant, was charged in the District Court of Oklahoma County with the crime of burglary in the second degree. He was tried by a jury who found him guilty and left the punishment to the court. Motion for new trial was filed on behalf of the defendant and overruled by the court. Judgment and sentence was pronounced against said defendant fixing his punishment at imprisonment in the State Penitentiary for a term of four (4) years, at which time an application for an order of the court suspending said sentence was presented to the trial court and evidence offered in support thereof.

After hearing statements of counsel, the trial court made the following statement:

"THE COURT: Well, he had a fair trial. Will you stand up, please. It is the judgment and sentence that you be taken to the penitentiary at McAlester, Oklahoma and there serve a term of four years and be delivered to the Warden of the Penitentiary by the Sheriff of this County. Appeal bond is set at Five Thousand Dollars. He is given thirty days in addition to the statutory time and three three.

"MR. MISKOVSKY: Comes now the defendant and serves notice of appeal.

"THE COURT: Very well."

Briefly stated the evidence adduced on behalf of the State was that on the 10th day of January, 1964 at approximately 9:00 o'clock A.M., Vera Bratcher returned to her home located at 2221 Lane Way Circle after having taken her children to school. She unlocked the door and proceeded to the hallway where she observed the defendant holding her clock and camera. She then inquired of the defendant what he was doing there and he stated that he thought he was in the home of one of his friends. She then asked what he was doing with her clock and camera and directed him to lay them down which he did in the living room.

She then asked if he had anything else and he replied that he did not, and asked if she wished to search him. At this moment the defendant emptied his pockets and one Gerald Lee Nelson, defendant's companion, entered the living room. She directed Nelson to empty his pockets and observing nothing belonging to her, she observed them leave the premises and enter an automobile parked in front of a residence two houses down the street from her premises. She copied down the tag number of the automobile, notified the police who arrested them at Nelson's home in Moore, Oklahoma.

Evidence upon which the defendant relied for acquittal was that on the morning of January 10, 1964, the defendant and Gerald Lee Nelson proceeded to a home under construction two houses down the street from the home of Mrs. Bratcher for the purpose of finding employment. They were unable to find anyone at work on the uncompleted house and walked next door where they knocked on the door, and finding no one at home, they then proceeded to the Bratcher residence where they knocked upon the door and heard a sound that sounded like an invitation to enter. Nelson opened the door and was followed into the house by the defendant. Nelson proceeded to the kitchen while the defendant stood in the hall where he was standing when Mrs. Bratcher entered the home. Testimony of Mrs. Bratcher that the defendant had her camera and clock in his possession was disputed as was the testimony of Mrs. Bratcher that the door of her home was locked when she returned.

█ Under the facts above outlined it is the position of counsel for the defendant that the evidence was wholly insufficient to support the verdict of the jury. With this contention we cannot agree.

█ We have repeatedly held that where there is competent evidence in the record from which the jury could reasonably conclude that defendant was guilty of the crime alleged in the information, Court of Criminal Appeals will not interfere with verdict, even if there is sharp conflict in the evidence and different inferences might be drawn therefrom, since it is the exclusive province of the jury to weigh the evidence and determine the facts.

█ It is next contended that the trial court erred in overinstructing the jury. We here take notice that no exception was taken to the court's instructions, and under such circumstances it is the duty of the Court to examine the instructions as a whole and if they fairly state the law applicable to the facts and are free of fundamental error prejudicial to the accused,

such instructions will not form the basis for a reversal. See Stokes v. State, Okl. Cr., 366 P.2d 425 (1961); Baxter v. State, Okl.Cr., 364 P.2d 705 (1961); Tidmore v. State, Okl.Cr., 341 P.2d 618. We have examined the instructions as a whole, and finding them free from fundamental error prejudicial to the accused, are of the opinion that this assignment of error is without merit.

██ It is next contended that the sentence imposed by the trial court is excessive. The punishment imposed by the trial court was two years greater than the minimum which could have been imposed, and three years less than the maximum, and we cannot conscientiously say that the punishment is excessive or induced by bias, prejudice or passion, nor is it shocking to the conscience of the Court, and we will here follow the rule stated in Johnson v. State, Okl.Cr., 386 P.2d 336 (1963) that:

"The question of excessiveness of punishment must be determined by a study of all the facts and circumstances in each particular case, and the Court of Criminal Appeals does not have the power to modify a sentence unless we can conscientiously say that under all facts and circumstances the sentence is so excessive as to shock the conscience of the court."

It is lastly contended that the trial court abused his discretion in refusing to grant an order suspending the judgment and sentence under the provisions of Title 22 O.S.A. § 991, which provides:

"Whenever any person shall be convicted in any court of record for any crime other than murder, manslaughter or arson, the Judge trying said cause may, after sentence, suspend said judgment and sentence, and allow said person so convicted to be released upon his own recognizance. Where a fine and imprisonment are assessed, the Judge may suspend both, or may suspend either, and order the enforcement of the other. Further, the Judge may order

any person so convicted to serve such part of the sentence as the Trial Court shall determine fit and proper and suspend the balance of the sentence during good behavior and may order him to pay the costs. Provided, that no such person shall be so released, who, has not, prior thereto, borne a good reputation or who may have been prior thereto convicted of a felony in any state or territory of the United States."

In support of this contention counsel cites Gillespie v. State, Okl.Cr., 355 P.2d 451, wherein this Court speaking through the Honorable Kirksey Nix stated:

"The trial court in passing upon an application for a suspended sentence must base his decision upon some grounds sanctioned by law. The refusal of the application must not be arbitrary and cannot be based upon mere whim or caprice or reason not in the exercise of sound legal discretion."

We believe that the facts in the instant case are clearly distinguishable from those in the above case. The stated and sole reason for the denial of application in Gillespie v. State, supra, was as set forth in the body of the opinion quoting from the trial record:

"When you go to trial in this court before a jury and you are convicted, you don't get a suspended sentence unless the jury insists on it in their verdict, and I think you are familiar with that. * * *"

In the instant case the evidence offered in support of the application for an order suspending judgment and sentence was that the defendant had been picked up on a vagrancy charge and pleaded guilty; was picked up for fighting in McKinley Park; was arrested in Chicago in a stolen automobile; and was expelled from high school for poor attendance and fighting, and that the defendant's work record was sporadic. The defendant's father testified that the defendant had not been under his supervision, and that: " * * * I was home nearly every weekend and he (the defendant) was all right, as far as I knew. I didn't know anything. When I would come home and see him on a weekend and I would get along with them and do right by them, that's all I can say as to that. I don't know of anything that the boy done wrong."

The mother testified that she had tried to straighten the defendant out, but was evidently unsuccessful since he is now under judgment and sentence for burglary in the second degree. The defendant testified that he was not guilty of the crime the jury found him guilty of. Defendant testified that he was still associating with Jerry Nelson (his companion in the burglary) who was the same person who stole the automobile used in the Chicago affair. Linda Holloway testified that it was "possible" that she and the defendant would be married. After hearing the testimony of the defendant and his witnesses, the Court refused to suspend the sentence.

It is abundantly clear from the evidence presented that the trial court did not abuse his discretion in refusing to grant a suspended sentence. The evidence presented for the consideration of the trial court clearly supports a finding that the defendant did not bear a good reputation prior to his conviction.

We have repeatedly held that the Court of Criminal Appeals will not interfere with the discretion of the trial court in granting or refusing an application for suspended sentence in absence of an abuse of discretion. Lavender v. McLeod, Okl. Cr., 325 P.2d 1080.

On the record before us we are of the opinion that the judgment and sentence appealed from should be, and the same is hereby affirmed.

NIX and BRETT, JJ., concur.