Charles Glen **HAYES**, Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. F–75–704.

Court of Criminal Appeals of Oklahoma.
May 20, 1976.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Joe Mark El-kouri, Legal Intern, for appellee.

Richard A. Hoffman, Appellate Public Defender, for appellant.

## OPINION

BLISS, Judge:

Appellant, Charles Glen Hayes, herein-after referred to as defendant, was charged, tried before a jury and convicted of the crime of Obtaining Controlled Drug by Forged Prescription in violation of 63 O.S. § 2–407, After Former Conviction of a Felony in the District Court of Tulsa County in Case No. CRF–75–190. Punishment was assessed at a term of thirty (30) years under the direction and control of the Department of Corrections in the State of Oklahoma. From the judgment and sentence of the trial court the defendant has perfected his timely appeal.

Briefly stated, the evidence adduced at trial is as follows: Burt George, an agent for the Oklahoma Board of Pharmacy, testified that on the 22nd day of January, 1975, he was called to Scottie's Discount

Drug in Tulsa to investigate a problem with a prescription. The prescription was introduced into evidence as State's Exhibit No. 1. He further testified that he had known Dr. Robert Bissel for approximately four and one-half years and that the signature on Exhibit No. 1 was definitely not Dr. Bissel's.

Dr. Robert Bissel testified that he was a general practioner in Pryor, Oklahoma, and identified the defendant as a patient who had been in his office on two occasions. On the 17th day of January, a Friday, the defendant was seen and given a prescription for thirty tablets of Preludin. He further testified that none of the writing on Exhibit No. 1 was his and stated that it was not signed by him or any of his employees. On the 19th day of January, Dr. Bissel received a call from Mrs. Heatly who described the signature affixed to a prescription. He told her that the prescription was not his since she was able to read his name clearly. On cross-examination he testified that he had numerous examination rooms in his office and each room contained prescription pads.

John R. Kagle then testified that in January of 1975, he was employed at Scottie's as the front-end manager. The registered pharmacist at the time was Pat Heatly. On January 19th, at 12:00 p.m. he opened up the store and the defendant was waiting to get in. He further stated that a controversy arose between the defendant and the pharmacist concerning a prescription. The pharmacist called the doctor named on the prescription and the defendant seemed to be nervous. The pharmacist then showed Kagle a prescription which she questioned, State's Exhibit No. 1. On cross-examination he admitted that he was not a pharmacist and could not unequivocally state that Exhibit No. 1 was the prescription he had seen on the 19th.

Mrs. Pat Heatly testified that she was a licensed pharmacist and was employed at Scottie's Discount Drug on the 18th of January. She identified State's Exhibit No. 1 as a prescription for Preludin, a con-

trolled Class II drug. She then identified the defendant as the person who presented Exhibit No. 1 to her on the 18th. On the 19th, right after the store opened, the defendant presented another prescription for sixty Preludin tablets which was purportedly signed by Dr. Bissel. Since she realized that the defendant had been there the day before with a similar prescription and since she felt the signature on the second prescription was not genuine, she called the doctor who told her that both prescriptions were forged. The prescription was not filled and the defendant left.

The State then introduced State's Exhibit No. 3 which was a certified copy of the judgment and sentence in case no. CRF–72–1133 in the District Court of Tulsa County, wherein the defendant was convicted of robbery with firearms. The judgment and sentence was introduced into evidence pursuant to the stipulation of the defendant.

The defendant then called Forrest Jones who testified that he had numerous felony convictions and had used narcotics for over twenty-six years. He testified that he accompanied the defendant to Dr. Bissel's office and took a prescription blank while there. He further stated that he wrote State's Exhibit No. 1, thought he used the name of the defendant, and was the one that handed Exhibit No. 1 to the pharmacist at Scottie's and received the filled prescription.

The defendant then testified in his own behalf that he was twenty-seven years of age, used drugs and had been convicted for armed robbery, knowingly receiving stolen property and that he had a drug conviction. He further stated that in mid-January he was contacted by a girl named "Grace" who needed to get help for a friend named Forrest Jones. The defendant took Jones to Pryor to get a prescription. The defendant stayed in the pickup while Jones went in to see Dr. Bissel. Jones got a prescription for Preludin and they went back to Tulsa to Scottie's where the prescription was filled. The defendant

stated that he accompanied Jones into Scottie's and purchased some vitamins. He then returned to the pharmacy on the next day, January 19th, to fill a valid prescription. The pharmacist was the same lady who filled the Jones prescription on the day before. She refused to fill the valid prescription and returned it to him. On cross-examination the defendant admitted that he had gotten drugs by forged instruments in the past and that he obtained a valid prescription from Dr. Bissel on the 18th but waited until Sunday to "cash it". He further stated that he and Jones did not look alike but they both had mustaches. The defense then rested.

The defendant's first assignment of error contends that the trial court erred in instructing the jury concerning enhancement of punishment. The record indicates that the trial court instructed the jury as follows, to-wit:

"Any person convicted of a felony crime of Obtaining Controlled Drug by Forged Prescription is punishable by imprisonment for not more than ten years. And, in this connection, the State has further alleged that the defendant has been convicted of a previous felony, to-wit: The crime of Robbery with Firearms, as recited in the information.

"Should you find beyond reasonable doubt that the defendant was guilty of Obtaining Controlled Drug by Forged Prescription and in addition there to if you find that he was previously convicted of a felony then and in that event the Court would inform you that the punishment for Obtaining Controlled Drug by Forged Prescription After Former Conviction of a Felony is punishable by a term of imprisonment in the State Penitentiary for any period of years not less than ten."

This instruction conforms to the general statute on enhancement of punishment, 21 O.S.1971, § 51 which reads in relevant portion as follows, to-wit:

"Every person who, having been convicted of any offense punishable by imprisonment in the penitentiary, commits any crime after such conviction is punishable therefor as follows:

"1. If the offense of which such person is subsequently convicted is such that upon a first conviction an offender would be punishable by imprisonment in the penitentiary for any term exceeding five (5) years, such person is punishable by imprisonment in the penitentiary for a term not less than ten (10) years."

The defendant urges that the trial court should have instructed in conformance with 63 O.S.1971, § 2–407 which reads in relevant portion as follows, to-wit:

"No person shall obtain or attempt to obtain a controlled dangerous substance or procure or attempt to procure the administration of a controlled dangerous substance:

"1. By fraud, deceit, misrepresentation, or subterfuge;

"2. By the forgery or alteration of a prescription or of any written order;

"3. By the concealment of a material fact; or

"4. By the use of a false name or the giving of a false address.

"(B) . . .

"(C) Any person who violates this section is guilty of a felony punishable by imprisonment for not more than ten (10) years. A second or subsequent offense under this section is a felony punishable by imprisonment for not less than four (4) nor more than twenty (20) years."

"(D) . . ."

citing *Ellison v. State,* Okl.Cr., 493 P.2d 837 and *Wood v. State,* Okl.Cr., 515 P.2d 245.

The defendant urges that § 2–407 is a specific enhancement of punishment statute regarding those persons who have been involved with prior drug violations. However, the information under which the defendant is charged alleges that the defendant committed a felony, obtaining a con-

trolled drug by forged prescription, after former conviction of a felony, robbery with firearms. Section 2–412 of Title 63 defines a "second or subsequent offense" under the Uniform Controlled Dangerous Substances Act as follows, to-wit:

"An offense shall be considered a second or subsequent offense under this act, if, prior to his conviction of the offense, the offender has at any time been convicted of an offense or offenses under this act, under any statute of the United States, or of any state relating to narcotic drugs, marihuana, depressant, stimulant, or hallucinogenic drugs, as defined by this act."

■ The question before us is whether the punishment for an offense committed under the Uniform Controlled Dangerous Substances Act may be enhanced pursuant to the provisions of 21 O.S. § 51 if the prior offense alleged in the information is a conviction not coming within the purview of said Act.

An examination of *Wood* and *Ellison* indicates that in both cases the information recited that the first offense was an offense which came within the purview of 63 O.S., § 2–412. Therefore both *Wood* and *Ellison* are distinguishable on the facts.

It is our opinion that the general provisions of 21 O.S. § 51 are applicable in the instant case. To hold otherwise would permit an habitual criminal who is charged with a drug related offense to admit to a prior drug related offense and, by such admission, reduce the limits of possible punishment. Reason and justice do not require such a result, and we do not believe that the Legislature so intended. The defendant's first assignment of error is without merit.

■ The defendant's second assignment of error contends that the trial court committed reversible error in permitting the prosecutor to examine the pharmacist concerning the prescription presented on the 19th when said prescription was not introduced into evidence. In support of his contention the defendant argues that the prescription itself was the best evidence and cites *Hayes v. State*, Okl.Cr., 397 P.2d 524, for the proposition that the best evidence rule requires that testimony relating to the contents of a written document may not be admitted into evidence if it is possible to produce that document for the examination of the trier of fact. We fully agree with the rule set out in *Hayes*. However, in the instant case, the defendant, while testifying in his own behalf stated as follows, to-wit:

"A. I gave her the prescription, she stood there—

"Q. Pardon me, the same woman that was there on Saturday?

"A. Yes, sir, it is.

"Q. You are quite sure of that?

"A. Positive.

"Q. What happened?

"A. When I gave it to her, she stood there a while, went through these files and stuff and she said, 'Sir.' And, I said, 'Yes.' And, she handed up two prescriptions and I looked at one of them and she said, '*Well, I'm going to have to give it back to you.*' I don't know what she said, but what she meant was that she couldn't fill it and I could not understand why she could not fill it because the day before she filled one from that doctor, so I couldn't understand it. I told her to call the doctor and verify it and she said, well, it's not her practice to call and it was out of town." (Emphasis added.)

It appears from the record that the prescription was returned to the defendant on the 19th. Therefore it would have been impossible for the state to produce the prescription in question and defendant's second assignment is without merit.

■ The defendant's third assignment of error urges that certain questions and

comments asked and made by the assistant District Attorney were so prejudicial to the rights of the defendant as to deprive him of a fair and impartial trial. The defendant first complains that the prosecutor was too harsh in his cross-examination of defense witness Jones concerning his numerous prior felony convictions. We find nothing in the record to indicate that the prosecutor did anything other than his duty in attempting to impeach the credibility of Jones. The defendant further contends that the prosecutor erred in asking Jones if he would "rather go in a drug store with a gun and ask for narcotics." However, the record reveals that objection was made the trial court sustained same and admonished the jury pursuant to defense counsel's request. Such an admonishment in the instant case cured the error.

From an examination of the record as a whole, it is our opinion that said cause was tried by two competent attorneys trying to perform their duties to the best of their abilities. We do not feel that the prosecutor committed error. The defendant's third assignment of error is without merit.

The defendant next urges that the punishment was excessive. In *LaRue v. State*, Okl.Cr., 404 P.2d 73, we held as follows, to-wit:

"The question of excessiveness of punishment must be determined by a study of all the facts and circumstances in each particular case, and the Court of Criminal Appeals does not have the power to modify a sentence unless we can conscientiously say that under all facts and circumstances the sentence is so excessive as to shock the conscience of the court."

In the instant case we cannot conscientiously say that the sentence imposed shocks the conscience of this Court. The penalty assessed was well within the limits prescribed by law and there is nothing in the record to indicate that the jury was influenced by passion or prejudice. The judgment and sentence appealed from should be and the same is, hereby, AFFIRMED.

It is noted that the defendant was charged with and the jury returned a verdict of guilty of Obtaining Controlled Drug by Forged Prescription, After Former Conviction of a Felony. However, the Judgment and Sentence on Conviction reads that the defendant was convicted of attempting to obtain controlled drug by forged prescription. This evidently is a scrivener's error and the trial court is directed to correct the Judgment and Sentence by Order Nunc Pro Tunc to reflect the true verdict of the jury.

BRETT, P. J., and BUSSEY, J., concur.

BUSSEY, Judge (concurring)

I concur with the opinion of my colleague, Judge Bliss, and for the purpose of clarification would observe that preludin is a trade term for phenmetrazine, which is manufactured by Boehringer-Inglehiem Company, and falls squarely within the provisions of 63 O.S.Supp.1975, § 2–206 ¶ D 2 which provides "Phenmetrazine and its salts."

In *Yingst v. State*, Okl.Cr., 513 P.2d 1322 (1973), we held that the descriptive term under which a product is sold is sufficient description to apprise the public that it falls within the purview of the Uniform Dangerous Substances Act of the State of Oklahoma.